UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        Respondents,

  -against-                                  MEMORANDUM OF LAW

VINCENT BASCIANO, JR.               13-CR-340 (RJS)
JOSEPH BASCIANO
STEPHEN BASCIANO

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### Preliminary Statement

This memorandum of law is submitted, on behalf of <u>all Defendants</u> with standing, in support of Defendants' Notice of Motion which seeks suppression of all evidence derived as a result of the wiretap authorization, on the grounds that the application(s) for the wiretaps and search warrant were (1) disingenuous, misleading and false and (2) in that the wiretap authorizations failed to satisfy and comply with the "other investigative procedures" requirement of Title 18 U.S.C. § 2518 (1)[c].

Since derivative evidence was also obtained as a result of an inadequate application for wiretap authorizations, the fruits of the wiretap authorizations and the search warrant application must be suppressed. In addition, should the court decide that search warrant was issued in violation of his 4th Amendment rights, Defendants seeks the suppression of the physical evidence derived therefrom as fruit of the poisonous tree.

1

POINT I

THE WIRETAP EVIDENCE MUST BE
SUPPRESSED

The evidence obtained by means of the electronic interception of wire communications must be suppressed. The Government's application for the wiretaps herein failed to comply with the "other investigative procedures" requirement of Title 18 U.S.C. § 2518 (1)[c]. The affidavits and other declarations submitted to support the wiretap authorizations were disingenuous, misleading and false because they failed to adequately allege that other investigative procedures had been tried and failed or reasonably appeared to be unlikely to succeed if tried or were too dangerous. The defective affidavits influenced each of the successive wiretap authorizations in this case, and thus poisoned all of the evidence subsequently derived.

The Applicable Law

The government will seek to introduce into evidence intercepted conversations and other evidence obtained through or derived from the use of electronic eavesdropping. The fruits of these interceptions, however, must be suppressed on the grounds that the government's applications for the eavesdropping orders did not meet the "other investigative procedures" requirement of Title 18 U.S.C. § 2518.

A.      The Fourth Amendment Protects Telephone Communication

The United States Supreme Court ruled that telephone conversations were protected by the Fourth Amendment's prohibition on unreasonable searches and seizure. See, Berger v. New York, 388 U.S. 41 (1967); Katz v. United States, 389 U.S. 347 (1967). As a result of those decisions, wiretapping, which the Supreme Court deemed

unreasonably intrusive in the absence of strict regulations, was outlawed in our country until Congress enacted the federal wiretap statute.

B.  The Federal Wiretap Act Restricts The Use of Wiretapping

In recognition of the threat to privacy rights that would result from unrestricted use of eavesdropping devices, Congress passed Title III of the Omnibus Crime Control and Safe Streets Act of 1968, which strictly regulates the interception of wire, or, and electronic communications.  See 18 U.S.C. § 2510, et seq.

Specifically, Title III requires that a certain regime of procedures be followed by law enforcement officials before a court can grant a request for wiretap authorization.   See, 18 U.S.C. §§ 2510-2519.  Section 2518 (1) of Title 18 U.S.C., sets out in detail the requirements for the information to be included in an application for an order authorizing the interception of wire communication.

In addition to establishing probable cause to believe an eligible criminal offense has been committed and that communications relevant to that offense would be intercepted by the wiretap, (<u>United States v. Biaggi</u>, 853 F2d 89, 95 (2d Cir. 1988) and 18 U.S.C. § 2513[a]), the federal wiretap statute also requires, that an application for a wiretap order include "a full and complete statement as to whether other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous." See, 18 U.S.C. § 2518(1)[c].

The above requirements, plainly set forth in 18 U.S.C. § 2518(1)[c], which mandate the court to make an objective determination that normal investigative techniques have been tried and failed, appear unlikely to succeed, or are too dangerous, are often referred together as the "necessity requirement."

The "necessity requirement" is not a mere trifle, but is designed to ensure that electronic surveillance is not used when normal investigative techniques are adequate to expose the crime. See, United States v. Kahn, 415 U.S. 143, 153 n. 12 (1974).

The "necessity requirement" directly and substantially implemented Congress' intent to limit the use of wiretapping as an extraordinary investigation tool of last resort. United States v. Giordano, 416 U.S. 505, 528 (1974); See, gen., S. Rep. No. 1097,

90th Cong.2d Sess., 101.  Indeed,

> Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make double sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications.

United States v. Giordano, 416 U.S. 505, 515 (1974); United States v. Williams, 580 F.2d 578, 587-588 (D.C. Cir), cert. denied 439 U.S. 832 (1978)("necessity is a keystone of Congressional regulations of electronic eavesdropping").

Failure to satisfy the requirements requires that the contents of the intercepted communications and the evidence derived therefrom be

4

suppressed.  United States v. Donovan, 429 U.S. 413, 433-34 (1977).

Congress recognized that wiretaps are extraordinarily intrusive investigative means.  As such, the intrusiveness of intercepted communications mandates that when courts authorize wiretaps, they must exercise great care in protecting individual privacy.  See, United States v. Bobo, 477 F.2d 974, 979 (4th Cir. 1973).  As stated by the Supreme Court in Berger v. New York, "few threats to liberty exist which are greater than that posed by the use of eavesdropping devices."  See, Berger, 388 U.S. at 63.

It is for this reason that wiretap authorization must not be "routinely employed as the initial step in a criminal investigation." Giordano, 416 U.S. at 515; accord, United States v. Kalustian, 529 F.2d 585, 589-590 (9th Cir. 1975).  Yet for all practical purposes, this is precisely what occurred here in the instant investigation.  Accordingly, the fruits of the wiretap authorizations must be suppressed.

C.   The Substance of the Government's Showing

Numerous applications for orders authorizing the interception of wire communications over a cellular telephone were submitted in this case.  On a CD labeled "discovery," Defendants were not named as targets.  However, in the instant indictment Defendant Vincent Basciano, Jr., is listed as the lead defendant suggesting the government has deemed him a leader in the alleged conspiracy.

Unlike many wiretap cases, the wiretap herein was not required in order to identify the leaders of the operation.  See, e.g. United States v. Martino, 664

F.2d 860, 868 (2d Cir. 1981), cert. denied, 458 U.S. 1110 (1982). Rather, in this case, the government had already identified the leadership and other individuals of the alleged conspiracy. Indeed, "CW-1" had engaged Defendants in several consensually monitored conversations.

As such, it is clear that the Task Force sought wiretap authorization solely to produce additional evidence, without even attempting, at the early stages of the investigation against the Defendants to conduct alternative investigative methods. Thus, the most persuasive argument for the use of wiretapping - that only such surveillance can penetrate an organization and reveal its leaders - is not available here. Accordingly, the Task Force's decision not to pursue alternative investigative procedures must be scrutinized carefully.

Moreover, the government's skeletal assertion that each available alternative investigative technique had been tried and failed, or that they appeared unlikely to succeed or were too dangerous, is simply not supported by the facts and circumstances actually present in this case. In fact, both affidavits submitted by Special Agent Jennifer A. Laurie, which ultimately lead to the arrests of the Defendants herein, merely recite, in pro forma fashion, the false and misleading information pertaining to the overall investigation.

However, the government is required to present more than merely the recitation of the requirements of section 2518 (1)[c] and the limitations of individual investigation techniques.

> "We must be careful not to permit the government merely to characterize a case as a 'drug conspiracy' . . . that is therefore inherently difficult to investigate. The affidavit must show with specificity why in this particular investigation, ordinary means of investigation will fail."

United States v. Robinson, 698 F.2d 448, 452 (D.C. Cir. 1983); See also, United States v. Simpson, 813 F.2d 1462, 1472 (9th Cir. 1986).

The alternative investigative methods actually tried herein did not fail at all. In fact, they were highly successful and appeared likely to continue to succeed. Thus, these alternative means of investigation were a wide-open and viable avenue of investigation.

However, the law requires more than what the Task Force presented in support of the wiretap authorization: "The government in each wiretap application must identify specific circumstances indicating that traditional techniques cannot reveal the broader picture." Simpson, 813 F.2d at 1472. Conclusory statements do not satisfy the statutory requirements. See, United States v. Lilla, 699 F.2d 99 (2d Cir. 1983).

In Lilla, the Second Circuit reversed various narcotics convictions upon its holding that the New York State police had failed to meet the alternative investigative procedures provision of the New York state wiretap statute by ignoring already developed and promising contacts with the targets of the investigation. The Second Circuit in Lilla compared New York's alternative investigative means requirement to Title 18 U.S.C. § 2518(1)[c]. See, Lilla, 699 F.2d at 104. The basis for this holding was the Court's

7

recognition that an undercover police officer had already established a working relationship with the leader of the conspiracy. Here, a similar relationship with the leader and alleged leadership level participants had been developed, but not fully exploited. See also, People v. Brenes, 53 A.D.2d 78 (1st Dept. 1976), aff'd 42 N.Y.2d 41 (1977)(finding that when police officers and informers observed couriers entering and exiting suspected apartments and set up, but never concluded, a buy, alternative investigatory means were available). The government simply never advanced the investigation using traditional investigation methods prior to the wiretap application. Instead, the government was content to apply for the wiretap authorization without pursuing alternative investigative measures as required by the statute.

The government's effort to obtain further information related to the Defendants through physical surveillance and cooperating witnesses was remarkably successful - not a failure. The government simply discontinued these successful approaches in favor of obtaining evidence through the use of eavesdropping devices, a far easier but substantially more intrusive technique.

While there is no question that the wiretap authorizations in this case produced a prolific body of evidence related to the supply, transportation and distribution of marijuana, there is, nevertheless, no basis to conclude that the same results could not have been reached through plain old school detective work.

CONCLUSION

Defendants submits that the above violations and irregularities are fundamental and constitute defects so basic as to undermine Congressional intent that interception of wire communications be circumscribed and subject to exacting judicial supervision. See <u>United States v. Giordano</u>, 416 U.S. 505 (1974); <u>In Re United States</u>, 10 F.3d 931, 934 (2nd Cir. 1993).   Defendants further states that the Government's activities in this instance under § 2518 were illegal and void because the activities of the Government were such that Defendants' Fourth Amendment privacy interests as guaranteed by the United States Constitution were violated.

WHEREFORE, for each and all of the foregoing reasons, Defendants prays that the evidence procured by virtue of any wiretap orders be suppressed in accordance with the provisions of 18 U.S.C. § 2518(10)(a), and that upon the suppression of such evidence that the case against Defendants be dismissed.

Respectfully submitted,

      **/s/**
Murray Richman, Esq.

      **/s/**
Mathew Mari, Esq.

      **/s/**
Joshua L. Dratel, Esq.