E2jQbasP                      Plea

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA
3
              v.                          13 CR 340 (RJS)
4
    STEPHEN BASCIANO
5
                   Defendant
6   ------------------------------x

7                                         New York, N.Y.
                                          February 19, 2014
8                                         11:20 a.m.

9
    Before:
10
                      HON. RICHARD J. SULLIVAN
11                                        District Judge

12
                           APPEARANCES
13
    PREET BHARARA
14       United States Attorney for the
         Southern District of New York
15   REBECCA MERMELSTEIN
         Assistant United States Attorney
16
    LAW OFFICES OF JOSHUA L. DRATEL PC
17       Attorney for Defendant Basciano
    JOSHUA L. DRATEL
18

19

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

E2jQbasP                          Plea

1              (In open court; case called)

2              THE DEPUTY CLERK:  For United States?

3              MS. MERMELSTEIN:  Good morning, your Honor.  Rebecca

4     Mermelstein for the government.

5              THE COURT:  Yes, Ms. Mermelstein, good morning.

6              For the defendant?

7              MR. DRATEL:  Good morning, your Honor.  Joshua Dratel

8     for Mr. Basciano, who is seated beside me.

9              THE COURT:  Yes, Mr. Dratel.  Good morning.

10             Mr. Basciano, good morning to you.

11             THE DEFENDANT:  Good morning.

12             THE COURT:  Do you need to finish up something?

13             MR. DRATEL:  Just one more signature, your Honor.

14             THE COURT:  Take your time.

15             MR. DRATEL:  Ready, your Honor.  Thank you.

16             THE COURT:  Mr. Dratel, as I understand it,

17    Mr. Basciano wishes to withdraw his previously entered plea of

18    not guilty and plead guilty to Count One of the superseding

19    indictment S7 13 CR 340.  Is that right?

20             MR. DRATEL:  That's correct, your Honor.

21             THE COURT:  Mr. Basciano, before I accept your guilty

22    plea, I am going to ask you some questions here in court.  The

23    purpose of these questions is, first of all, to make sure you

24    understand your rights, the rights you have as a defendant in a

25    criminal case.

E2jQbasP                    Plea

1          Second, it's to make sure you are pleading guilty

2    because you are guilty and not for some other reason.

3          As I ask you these questions, obviously, I want to

4    make sure you understand the questions before you try to answer

5    them.  If I am not clear or if you are just not following me,

6    tell me.

7          THE DEFENDANT:  OK.

8          THE COURT:  I am going to rely on you to tell me if

9    you are having difficulty understanding me.

10          THE DEFENDANT:  OK.

11          THE COURT:  Don't answer a question if you don't

12    understand it.

13          THE DEFENDANT:  OK.

14          THE COURT:  If at any point you want to confer with

15    Mr. Dratel before you answer a question, take your time.

16          THE DEFENDANT:  OK.

17          THE COURT:  I will give you as much time as you need,

18    so don't feel rushed in any way.

19          THE DEFENDANT:  OK.

20          THE COURT:  In a minute I am going to ask you to take

21    an oath.  I'm going to ask you to stand and raise your right

22    hand and swear that you are going to truthfully answer my

23    questions.  If after taking that oath, you were to make false

24    statements, well, that would be a crime.  That would be

25    perjury.  I tell you that not to scare you, but just to remind

E2jQbasP                    Plea

1  you that it's very important that you be truthful and accurate

2  and complete in your answers to me.  All right?

3          THE DEFENDANT:  I understand.

4          THE COURT:  Any questions so far?

5          THE DEFENDANT:  No.

6          THE COURT:  Let me ask you to stand then and raise

7  your right hand.

8          (Defendant sworn)

9          THE COURT:  Mr. Basciano, could you tell me your full

10  name?

11          THE DEFENDANT:  Stephen Basciano.  Stephen Paul

12  Basciano.

13          THE COURT:  I'm saying Basciano, but it's Basciano?

14          THE DEFENDANT:  Basciano.

15          THE COURT:  How old are you, Mr. Basciano?

16          THE DEFENDANT:  29.

17          THE COURT:  How far did you go in school?

18          THE DEFENDANT:  I graduated.

19          THE COURT:  From?

20          THE DEFENDANT:  From high school.

21          THE COURT:  From high school.  Where was that; here in

22  New York?

23          THE DEFENDANT:   Yeah, in Queens.  Whitestone, Queens.

24          THE COURT:  Are you now or have you recently been

25  under the care of a doctor or a psychiatrist?

E2jQbasP                          Plea

1            THE DEFENDANT:  I go to a doctor for anxiety.

2            THE COURT:  For?

3            THE DEFENDANT:  Anxiety.

4            THE COURT:  Anxiety?

5            THE DEFENDANT:  Yes.

6            THE COURT:  How long have you been doing that?

7            THE DEFENDANT:  It started about ten years ago, my

8    anxiety got better, and then I started going again about two

9    years ago.

10           THE COURT:  Are you taking any medication for that?

11           THE DEFENDANT:  I was taking Xanax, but now I'm not

12   taking nothing.

13           THE COURT:  Nothing now.  OK.

14           THE DEFENDANT:  No.

15           THE COURT:  Other than the anxiety treatments and the

16   Xanax, any other treatment or any other medicine that you've

17   been taking?

18           THE DEFENDANT:  No.

19           THE COURT:  Have you ever been hospitalized or treated

20   for any kind of mental illness or any kind of addiction,

21   including drug or alcohol addiction?

22           THE DEFENDANT:  No, just anxiety.

23           THE COURT:  In the last two days, have you taken any

24   medicine, taken any pills, any drugs, any alcohol, of any kind?

25           THE DEFENDANT:  Tylenol.

E2jQbasP                    Plea

1          THE COURT:  Tylenol.  So Tylenol I don't think affects

2     your memory or your judgment in any way?

3          THE DEFENDANT:  No.

4          THE COURT:  Right?  Is your mind clear today?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you have an understanding of what's

7     going to take place here today?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  Mr. Dratel, do you have any doubt as to

10    Mr. Basciano's mental competence or his ability to enter an

11    informed plea?

12          MR. DRATEL:  No, your Honor.

13          THE COURT:  Ms. Mermelstein, do you have any such

14    doubts?

15          MS. MERMELSTEIN:  No, your Honor.

16          THE COURT:  Neither do I.  I think based on

17    Mr. Basciano's answers to my questions so far, his demeanor,

18    his manner here in court today and previously, and based also

19    on the representations of the lawyers, I find Mr. Basciano is

20    fully competent to enter an informed plea.

21          Mr. Basciano, as I understand it, you wish to plead

22    guilty today.  Is that correct?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you feel you've had enough time to

25    discuss this case with your attorney, Mr. Dratel?

E2jQbasP                    Plea

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  Do you feel you've had enough time to

3    discuss with him any defenses that you may have to these crimes

4    charged?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  Are you satisfied with Mr. Dratel's

7    representation of you?

8              THE DEFENDANT:  Yes.

9              THE COURT:  All right.  What I want to do now is I

10   want to describe for you important rights that you have under

11   the Constitution and laws of the United States.  I am going to

12   do that in two ways:  First, I am going to ask you about a

13   document called an Advice of Rights form.

14             Do you have that there, Mr. Dratel?

15             MR. DRATEL:  Yes, I do, your Honor.

16             THE COURT:  I am going to spend a few minutes going

17   over that with you, not in any great detail.  Then I am going

18   to ask you questions here in court that cover a lot of the same

19   ground, not because I want to be repetitive, but just because

20   these rights are so important and your understanding of them is

21   so crucial, I don't want to leave anything to chance.  So I

22   view this as kind of belt-and-suspenders approach.

23             If, as we are going through this, I ask you questions

24   your not sure about these rights or you yourself have some

25   questions about them, please don't be shy about saying so.

1             THE DEFENDANT:  All right.

2             THE COURT:  We're not in a hurry here.  This is an

3    important day in your life.  This is an important event.  We

4    are going to do it right and very carefully.

5             THE DEFENDANT:  Thank you.

6             THE COURT:  All right?  Let's start with that

7    document.  It's a three-page document or a two-page document.

8    If you could turn to the second page.  There's a signature

9    line.  Is that your signature there, Mr. Basciano?

10            THE DEFENDANT:  Yes, it is.

11            THE COURT:  Before you signed that document, did you

12   read it?

13            THE DEFENDANT:  Is this the one I had?

14            Yes.  Yes, I read it.

15            THE COURT:  Did you have an opportunity to discuss it

16   with your attorney, Mr. Dratel?

17            THE DEFENDANT:  Yes.

18            THE COURT:  That document and the rights described in

19   that document?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Mr. Dratel, is that your signature on

22   there as well?

23            MR. DRATEL:  It is, your Honor.

24            THE COURT:  Before you signed it, you reviewed it with

25   your client?

E2jQbasP                    Plea

1              MR. DRATEL:  I did, your Honor.

2              THE COURT:  And you answered any questions that he

3     might have had?

4              MR. DRATEL:  I did.

5              THE COURT:  Great.  If you will, hand it up.  I will

6     mark it as a Court Exhibit.  I will call it Court Exhibit 1.  I

7     will date and initial it.

8              As I said, Mr. Basciano, I'm going to ask you some

9     questions here in court about these same rights.  The first

10    right, I'll guess we'll start with the most basic, is, you have

11    a right to a speedy and public trial by a jury for the charges

12    that are contained in this indictment.  Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  If there were a trial, the government

15    would have to prove your guilt beyond a reasonable doubt.  It's

16    a pretty high standard, beyond a reasonable doubt by competent

17    evidence.  That would be the standard they would have to prove

18    before you could be found guilty.  Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  A jury of 12 people would have to agree

21    unanimously that you were guilty before you could be found

22    guilty at trial.  Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  You would not have to prove that you were

25    innocent if you went to trial.  Do you understand that?

E2jQbasP                          Plea

1           THE DEFENDANT:  No.

2           THE COURT:  Well, I want to be sure you understand

3   that.  Do you understand that you have no obligation to do

4   anything at trial.  Do you understand that?

5           THE DEFENDANT:  Yes.

6           THE COURT:  If there were a trial, you could sit there

7   quietly and do nothing.  You could sit and read the paper,

8   basically.

9           THE DEFENDANT:  I understand.

10          THE COURT:  But the burden would still be on the

11  government to prove its case beyond a reasonable doubt.  Do you

12  understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  At trial and at every stage of your case,

15  you would be entitled to be represented by an attorney; and if

16  you couldn't afford an attorney, one would be appointed for you

17  at no cost to you.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  In this case, Mr. Dratel has been

20  appointed to represent you.  Is that correct?

21          THE DEFENDANT:  Yes.

22          THE COURT:  You're not paying him any money?

23          THE DEFENDANT:  No.

24          THE COURT:  Mr. Dratel is part of a select group of

25  lawyers who are approved by the court to represent people who

E2jQbasP                    Plea

1    don't otherwise have the ability to pay for an attorney.  We

2    are very fortunate in this district to have excellent

3    attorneys, some of the very best any place who are willing to

4    serve on that panel.  They get paid by the court, not a huge

5    amount, probably less than what they would normally get paid,

6    but they recognize it is an important thing to do, and they

7    will represent their clients zealously in these cases.  So

8    we're fortunate to have lawyers like that.

9            Mr. Dratel is one of those lawyers.  He will represent

10   you throughout this case.  If you want to go to trial, he's

11   happy to do it.  It doesn't matter to him whether you go to

12   trial or whether you plead guilty.  Do you understand that?

13           THE DEFENDANT:  Yes, I do.

14           THE COURT:  OK.  Now, if there were a trial in this

15   case, the witnesses for the government would have to come into

16   court, and they would have to testify here in your presence.

17   Do you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  If there were a trial, it would probably

20   be this courtroom or one like it, and the witness would come

21   right over here to this witness box so that you could see and

22   hear the witness as they testify.  That is because you have a

23   right to confront your accusers.  The Constitution says you get

24   that right.  You would be able to see and hear the witness.

25   Then mr. Dratel would have an opportunity to cross-examine

E2jQbasP                    Plea

1    those witnesses after the government had asked them questions.

2    Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And Mr. Dratel could ask questions

5    designed to test whether they're telling the truth, to test

6    whether they have an accurate memory, to test whether they know

7    what they're talking about.  Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Mr. Dratel would also have the opportunity

10   to object to the government's evidence if he thought there was

11   a basis to keep it out of the trial.  Do you understand that?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Now, as I said before, you have no

14   obligation.  You would have no obligation to do anything at a

15   trial.  You certainly would have no obligation to put on any

16   evidence.  But if you wanted to, you could.  You could call

17   witnesses, and you could introduce exhibits on your own behalf.

18   Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  If there were witnesses that you wanted to

21   come into court and testify because you thought they had

22   something important to say, and they told you, "You know what?

23   Not a chance.  I'm not coming to court.  Good luck.  I'm not

24   doing it."  Well, that wouldn't be the end of it.  You would

25   then have the ability to compel those people to make them come

E2jQbasP                         Plea

 1    to court or, I guess, I could make them come to court.  You

 2    could have subpoenas issued or other process used to make them

 3    come here and testify truthfully under oath.  Do you understand

 4    that?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  You yourself could testify at trial if you

 7    wanted to.  Do you understand that?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  You would have the right to do that.  You

10    also would have the right, of course, not to testify.  If you

11    chose not to testify, nobody could make you testify, and the

12    jury would not be allowed to attach any significance to the

13    fact that you chose not to testify.  Do you understand that?

14              THE DEFENDANT:  Yes.

15              THE COURT:  That's a really important principal in our

16    system of justice; not every country does it this way.  We make

17    it clear that the defendant has no obligation to speak, and

18    that a jury can't attach any significance to the fact that they

19    choose not to testify.  So I will tell the jury if there were a

20    trial, as I do in every case, that if the defendant chooses not

21    to testify, you can't hold it against him.  You can't say, ahh,

22    you must be guilty because an innocent person would testify.

23    You can't do that.  They can't count it at all.  It doesn't

24    matter.  It's an irrelevant fact.  They would have to put to

25    the side.  Do you understand that?

E2jQbasP                       Plea

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  If there were a trial, and if the jury

3     then returned a guilty verdict against you, you would have the

4     right to appeal the jury's verdict.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Above me sits a Court of Appeals, and you

7     could take the case to them after the trial if you didn't -- if

8     you were unhappy with the result in the trial.  You could ask

9     the Court of Appeals to overturn the jury's verdict, to send it

10    back for a new trial or to reverse it completely.  You would

11    have the right to make that appeal.  Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Even now, Mr. Basciano, as you are getting

14    ready to enter a guilty plea, you have the right to change your

15    mind.  Do you understand that?

16         THE DEFENDANT:  Yes, I do.

17         THE COURT:  We have not yet crossed the point of no

18    return.  We are getting pretty close, but we haven't gotten

19    there yet.  So, if you were to tell me right now, "You know

20    what?  I'd like to go to trial.  I don't want to plead guilty."

21    That would be fine.  I wouldn't be mad at you.  Mr. Dratel

22    wouldn't be upset, and neither would Ms. Mermelstein.  This is

23    your call.  We all understand that this is your call.  If you

24    want to go to trial we will respect that and we will schedule

25    the trial and go forward with the trial.  Do you understand

E2jQbasP                          Plea

1   that?

2               THE DEFENDANT:  Yes, I do.

3               THE COURT:  Do you nevertheless want to go forward

4   with a guilty plea at this time?  Do you want to go forward

5   with a guilty plea today?

6               THE DEFENDANT:  Yes, I do.

7               THE COURT:  Do you understand that by pleading guilty,

8   you will be giving up your right to a trial?

9               THE DEFENDANT:  Yes, I do.

10              THE COURT:  So, you will have waived that right.  It

11  will be gone, along with all the other rights I just mentioned.

12  Do you understand that?

13              THE DEFENDANT:  I understand.

14              THE COURT:  The only exception would be your right to

15  counsel; that would continue.  Mr. Dratel will continue to

16  represent you.  Even if there is no trial, he will represent

17  you.  He will represent you today at the plea and through

18  sentencing, and even through an appeal if there were an appeal.

19  That right would continue.

20              The other right, I guess, that would continue is your

21  right to appeal might continue; it might continue to some

22  extent, but you almost certainly wouldn't be able to appeal

23  whether or not you committed the crime if you plead guilty.

24  You generally can't plead guilty and then say to the Court of

25  Appeals, "I was just kidding.  I had my fingers crossed.  I

E2jQbasP                         Plea

1    didn't really do it.  I didn't mean what I said."  That would

2    be probably something you couldn't appeal.  All the other

3    rights would be waived outright.  Do you understand that?

4                 THE DEFENDANT:  Yes.

5                 THE COURT:  You should also know that by pleading

6    guilty, that means I will sentence you on the basis of your

7    guilty plea.  Not today but ultimately the sentence that I

8    impose will be based on the fact that you pled guilty to this

9    crime.  Do you understand that?

10                THE DEFENDANT:  Yes.

11                THE COURT:  You should also understand that before I

12   will accept your guilty plea, I am going to ask you to tell me

13   in your own words what it is that you did that makes you guilty

14   of this crime.  I am going to ask you that to make sure that I

15   can be confident you are pleading guilty because you are guilty

16   and not for some other reason.  Basically you'll be giving up

17   your right not to incriminate yourself once you tell me that.

18                So that is kind of a big deal.  I want to be sure you

19   understand that, as I said before, no one can make you testify,

20   no one can make you speak in court.  As a condition of going

21   forward with the guilty plea, I'm going to ask you to tell me

22   what you did.  Do you understand that?

23                THE DEFENDANT:  Yes.

24                THE COURT:  Are you willing to do that?

25                THE DEFENDANT:  Yes.

E2jQbasP                          Plea

1                   THE COURT:  Do you have any questions about any of

2       these rights that we have discussed?

3                   THE DEFENDANT:  No, I don't.

4                   THE COURT:  You are willing to give up your right to a

5       trial and all the other rights I just mentioned?

6                   THE DEFENDANT:  Yes.

7                   THE COURT:  Let's talk a little bit about the crime

8       charged.  You've been charged in an indictment.  You've read

9       the indictment.  You told me that, right?

10                  THE DEFENDANT:  Yes.

11                  THE COURT:  And the indictment charges you with

12      participating in a conspiracy to distribute marijuana?  Do you

13      understand that?

14                  THE DEFENDANT:  Yes.

15                  THE COURT:  And so the crime of conspiracy is a crime

16      of agreeing with others to commit a crime.  You don't have to

17      actually carry out the crime.  The agreement itself is the

18      crime.  But you've been charged with participating in a

19      conspiracy to distribute a thousand kilograms or more of

20      marijuana; but according to the plea agreement, you are going

21      to be allowed to plea to a lesser included offense, which

22      charges you with conspiring or agreeing with others to

23      distribute more than 50 kilograms or more than 140 pounds of

24      marijuana.  Do you understand that?

25                  THE DEFENDANT:  Yeah.

E2jQbasP                        Plea

1              THE COURT:  I am going to ask now Ms. Mermelstein to

2     summarize the element of this crime.  When I say the elements,

3     I mean the requirements.  These are things a jury would have to

4     find beyond a reasonable doubt before you could be found

5     guilty.  These are the things I will have to be confident could

6     be demonstrated before I could accept the guilty plea.  All the

7     elements sound technical, but are pretty straightforward, so

8     listen to Ms. Mermelstein carefully.  If when she has finished,

9     you have any questions about these elements, let me know.  We

10    can chat about it a little more.

11             Ms. Mermelstein, nice and loud because the acoustics

12    are so bad in here.

13             MS. MERMELSTEIN:  The elements are:  First, the

14    existence of an unlawful agreement.  Here, to distribute

15    marijuana.

16             Second, the defendant knowingly became a member of

17    that agreement.

18             And, third, certain penalties will apply if the

19    government proves that the conspiracy involved 50 kilograms or

20    more of marijuana.

21             THE COURT:  That means there is a 20 year maximum.

22             MS. MERMELSTEIN:  That's right, and the supervised

23    release, I think.

24             THE COURT:  Yes.  I will go through the penalties in a

25    moment.  You heard what Ms. Mermelstein said could you hear

E2jQbasP                         Plea

1    her, Mr. Basciano?

2              THE DEFENDANT:  Yes.

3              THE COURT:  The elements of this crime are pretty

4    straightforward.  One, the government would have to prove that

5    this agreement existed.  There was an agreement involving two

6    or more people to violate the narcotics laws as they relate to

7    marijuana.

8              The second element would be that you yourself

9    knowingly joined that conspiracy, understanding the illegal

10   nature of the conspiracy or the object of the conspiracy.

11   Those are the two elements.

12             In addition to that, the government would also have to

13   prove something else called venue.  Have you heard about venue?

14   Do you know what that is?

15             THE DEFENDANT:  No.

16             THE COURT:  I don't know why we still use that word.

17   It's the word we still use.  It's derived from a Latin word.

18             Venue refers to the fact that some part of the crime

19   has to have occurred here.  The United States is divided up

20   into 94 -- I think it's 94 different districts.  This district

21   is one of those.  It's the Southern District of New York.  It

22   covers Manhattan, the Bronx, Westchester, Rockland, Putnam,

23   Dutchess, a couple other counties around there.

24             Some part of the crime has to have occurred here in

25   this district.  It doesn't have to have been you that did

E2jQbasP                          Plea

1    something here.  As long as one of the members of the

2    conspiracy did some act in this district, that would be

3    sufficient.

4            If all of it took place in California, then you

5    couldn't be prosecuted here, and you couldn't be found guilty

6    here; but as long as one act took place here, it would be

7    sufficient even if it wasn't you who committed the act here.

8            For venue, the government doesn't have to prove that

9    beyond a reasonable doubt.  They just have to prove it by a

10   preponderance, which means the greater weight of the evidence.

11   So, as long as it's more likely than not that some act occurred

12   here, that would be enough for the jury to find that there was

13   venue here.

14           For the other two elements that I mentioned, that

15   would have to be found beyond a reasonable doubt, which is a

16   much higher standard.  OK?  Do you understand that?

17           THE DEFENDANT:  Yeah.

18           THE COURT:  Any questions about those elements?

19           THE DEFENDANT:  No.

20           THE COURT:  Any questions about venue?

21           THE DEFENDANT:  No.

22           THE COURT:  OK.  What I want to do now is spend a

23   minute or two talking about the penalties you face for this

24   crime.  This crime carries a maximum term of imprisonment of 20

25   years.  It also carries a maximum term of supervised release of

E2jQbasP                          Plea

1   life.  Supervised release is basically that you would be

2   supervised after you are released from jail?

3                THE DEFENDANT:  Yes.

4                THE COURT:  So, you would be sentenced.  You serve

5   your sentence, you would come home, and then you would be

6   supervised for a period of time by the probation department.

7   That is supervised release.  The maximum term of supervised

8   release the maximum is life.  The mandatory minimum term of

9   supervised release is three years.  I couldn't give you less

10  than that even if I wished to.

11               In addition, I can also order that as part of your

12  sentence a fine, which includes -- the maximum fine would be

13  the greatest of either a million dollars or twice the gross

14  gain that was derived from this crime or twice the gross loss

15  to persons other than yourself that resulted from the crimes.

16  So, whichever of those three is the greatest, that's the

17  maximum fine.

18               In addition to a fine, I can also order that you pay

19  restitution to any person that was injured as a result of this

20  crime.  I don't know if that would apply here, but sometimes it

21  does.  That's separate from a fine.  So, if somebody got shot

22  or took drugs and is now in a wheelchair, I could order you to

23  pay that person so they would be compensated for being in a

24  wheelchair.  That would be separate from a fine.

25               In addition, I can also order that you forfeit any of

E2jQbasP                          Plea

1    the profit or any of the proceeds that were derived from this

2    crime.  So, whatever money was made by you or others during the

3    course of this crime, I could order you to forfeit that money

4    back.  If you've already spent that money, I can order that you

5    forfeit substitute assets, other money that you have or will

6    have in the future.  That's to make sure that nobody profits

7    from the crime.  So, that's part of the sentence as well.

8            That would also include any property that was used to

9    carry out the crime.  So, if you drove drugs from point A to

10   point B, I can order you to forfeit the car because the car was

11   used to facilitate the crime.  That's forfeiture.  It's

12   separate from a fine and separate from restitution.

13           Finally, there is a $100 special assessment.  That's

14   mandatory.  It has to be paid.  That's in addition to any fine,

15   any forfeiture or any restitution.  So, those are the maximum

16   penalties you face.

17           Any questions about those?

18           THE DEFENDANT:  No.

19           THE COURT:  A couple of other things about sentencing.

20           First of all, you are an American citizen, correct?

21           THE DEFENDANT:  Yes.

22           THE COURT:  So, as a result of this conviction, you

23   could lose certain valuable civil rights.  You could lose your

24   vote, your right to serve on a jury, your right to hold public,

25   office, your right to possess a firearm.  Do you understand

E2jQbasP                          Plea

1    that?

2                  THE DEFENDANT:  Yes.

3                  THE COURT:  You should also understand that in

4    connection with supervised release, the way that works is that

5    if while you were on supervised release, you were to violate

6    any of the terms and conditions of supervised release, well,

7    then I could send you back to jail for the full term of

8    supervised release.  You wouldn't get credit for the time you'd

9    already served on supervised release.  Do you understand that?

10                 THE DEFENDANT:  Yes.

11                 THE COURT:  So, I think this is an important point, so

12   I just want to make sure you understand.

13                 As I said before, supervised release is something that

14   happens after you're released from jail.  I have to give you at

15   least three years of supervised release.

16                 So, assume for this example that I give you three

17   years.  You come out of jail; you come home.  You're living at

18   home.  You're now supervised for three years by probation.

19   There would be conditions associated with that; among other

20   things, that you not commit any more crimes; that you not use

21   or possess drugs of any kind; that you not use or carry a

22   firearm.  There will be other things as well, but at least

23   those.

24                 Let's imagine for two years and eleven months, you

25   were perfect, you did everything you were supposed to do on

E2jQbasP                      Plea

1    supervised release; and then in the last month of the last

2    year, you commit another crime or you possessed a gun or you

3    used drugs.  I could, under this hypothetical, revoke your

4    supervised release, send you back to jail for three years, a

5    full term of supervised release, and you would not get credit

6    for the two years and eleven months where you had been perfect.

7    I want to make sure you understand that.

8                THE DEFENDANT:  I understand that.

9                THE COURT:  I don't know that I would do that, but I

10   certainly could do that.

11               THE DEFENDANT:  I understand that.

12               THE COURT:  OK.  Parole is something that is a term

13   that you've probably heard the term parole?

14               THE DEFENDANT:  Yes.

15               THE COURT:  Parole is not part of the federal criminal

16   justice system.  New York State has parole.  New Jersey has

17   parole.  Other states have parole.  The way parole typically

18   works in those places is, the judge would impose a sentence,

19   and then the defendant while serving the sentence might be let

20   out earlier because the parole board has decided this person is

21   a good bet.  It seems like they've made a good adjustment.

22   They're ready to come out.

23               That's not part of the federal system.  So, whatever

24   sentence I impose, that is the sentence you will serve.  Do you

25   understand that?

E2jQbasP                         Plea

1              THE DEFENDANT:  Yes.

2              THE COURT:  The only exception to that is you could

3    get a certain amount of time off for good behavior.  The amount

4    of time off would not be more than 15 percent of the total

5    sentence, and the decision as to what constituted good behavior

6    would be up to the Bureau of Prisons; not up to me.  OK?  Do

7    you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Any questions about that?

10             THE DEFENDANT:  About the post release and the

11   parole--

12             THE COURT:  Yes.

13             THE DEFENDANT:  Do I get both of them or just one of

14   them?

15             THE COURT:  There is no parole.  So, remember about

16   that.  Parole exists in some of the state court systems, but

17   not in the federal.  That is the way a judge that -- a parole

18   board or state can let somebody out sooner.  Even though the

19   Judge said 10 to 20, they can get out earlier.  Here, whatever

20   sentence I give you, if I give you three years, you'll do three

21   years.  If I give you five years, you'll do five years.  You

22   could get 15 percent off for good behavior but not more than

23   that, and the decision as to whether you demonstrated good

24   behavior would be up to the Bureau of Prisons; not up to me.

25             THE DEFENDANT:  OK.  I understand.

1          THE COURT:  Supervised release is when you get out.

2     You're home; living at home; hopefully, leading a healthy and

3     happy life.  Supervised release is a way that probation is

4     available to you because probation works for me, and they are

5     there to make sure you are not getting into trouble and to help

6     you stay on a good path and to make sure that you are getting

7     your life on track.

8          THE DEFENDANT:  OK.

9          THE COURT:  So, it's there to help you.

10         THE DEFENDANT:  Yeah.

11         THE COURT:  But it can be sometimes onerous because

12    you'll have to pee in a cup once in awhile.

13         THE DEFENDANT:  Yeah.

14         THE COURT:  You know, and you'll have to have the

15    probation officer come by and make a visit every once in awhile

16    unannounced, and you'll have to go to probation once in a

17    while, which is going to be a drag, but that's going to be

18    life.  But the purpose is to be sure you are progressing.

19         THE DEFENDANT:  Yeah.

20         THE COURT:  And the person who is really doing great

21    can sometimes be released early from supervised release because

22    when the probation officer says, "No, this guy gets it.  He's

23    totally on board.  We don't need to do this any more," that's

24    always a good thing.  That's what I hope happens.  But that is

25    supervised release.  OK?  Did that answer your question?

E2jQbasP                              Plea

1        THE DEFENDANT:  Yes, it did.

2        THE COURT:  Great.

3        Are you serving any other sentences right now?

4        THE DEFENDANT:  No, I'm not.

5        THE COURT:  No other state or other sentence?

6        THE DEFENDANT:  No.

7        THE COURT:  A couple other things about sentencing.  I

8    will decide what sentence you get.  Nobody else.  I will be the

9    one who decides.  I'm not going to do that today.  I will do

10   that in a few months.  But no matter what anybody else has told

11   you; if they've predicted what sentence you're going to get or

12   they've told you definitively what you're going to get, don't

13   count on it.  Nobody can tell you that because I am the only

14   one who knows what sentence you will get, and I don't know even

15   know at this point.  OK?

16       Another thing I want to make sure you understand

17   though is that there are certain factors I have to consider in

18   deciding what sentence to impose.  Congress has passed a law

19   that says judges have to consider a bunch of things.  I am

20   required to consider these things.  I would anyway, candidly,

21   but these are the things I will consider in deciding an

22   appropriate sentence.

23       First of all, I will consider your own personal

24   history.  You're 29.  You're a young guy.  Still, I have to

25   look at your whole life; everything that you've done, you know,

E2jQbasP                          Plea

1    who you are at this point.  So, I will look from your childhood

2    to your school history and record.  I'll look at your work

3    history, your criminal history.  I'll look at your family

4    circumstances today.  I will look at some other things.  I will

5    look at the decisions you've made in life -- the good things

6    you've done and the bad things you've done because I have to

7    impose a sentence on you.  You're unique.  And I have to tailor

8    a sentence to you as a person.  So I will look carefully at who

9    you are.

10                I also have to consider, of course, the facts and

11   circumstances of this crime.  This is a serious crime.  I have

12   to make sure that the sentence I impose reflects the

13   seriousness of the crime, and that it also promotes respect for

14   the law so that people realize, hey, you can't just violate the

15   law.  Also, I want to make sure the sentence I impose is a just

16   punishment for the crime that was committed.

17                I am going to look very carefully at facts and

18   circumstances of this crime; not just what it's called, but

19   what went on here, what you did, what others did, for how long

20   a period of time, you know, what amount of drugs was involved,

21   what role you played, whether there was any violence, all of

22   that I am going to look at carefully because all of that

23   affects just how serious this crime was, and I have to make

24   sure the sentence reflects the seriousness of the crime.

25                Another factor Congress says I must consider is the

E2jQbasP                         Plea

1    need to deter or discourage you and others from committing

2    crimes in the future.  If you think of it this way, the notion

3    there is that by imposing a sentence on you, I will be sending

4    a message:  A message to you and a message perhaps to other

5    people.  The hope is that the message gets sent and received

6    and internalized so that there is less crime in the future.

7    You will say, "I can't be doing in any more.  I don't want to

8    go to jail any more."  And if that is the cost of committing

9    crimes, I'm just not going to commit crimes.  And the hope is

10   that other people will say "I saw what happened to

11   Mr. Basciano, and I was thinking of maybe making a few bucks,

12   but its's not worth it, so I'm not going to commit that crime

13   either."  The hope is that there will be fewer people

14   committing these crimes in the future, and we will have less

15   crime.  That's the hope.

16          It's hard to know.  Again, it's hard to predict with

17   precision what exactly the impact of sentence will be on future

18   crime, but I think most of us know there is something to that.

19   It's plausible.  And it's something that courts for thousands

20   of years, I think, have tried to consider and make part of

21   their sentence.  So that is something I will consider.

22          Another thing I have to consider are your own needs

23   while you're in custody, Mr. Basciano.  So, for example, you've

24   had anxiety issues.  So I will make sure that that is something

25   that can be treated while you're in jail.

E2jQbasP                     Plea

1            THE DEFENDANT:  Thank you.

2            THE COURT:  Other defendants sometimes have serious

3    mental health problems or some have serious addiction problems,

4    and they need to have those problems addressed.  Some have

5    serious physical problems.  They're in wheelchairs, they have

6    cancer, and we have to make sure they're sentenced to places

7    that can deal with those issues.  That's important too.  I will

8    take that into account.  A very important factor I have to

9    consider is something called the United States Sentencing

10   Guidelines.  I'm holding up this book.  You've heard of the

11   sentencing guidelines?

12           THE DEFENDANT:  Yes.

13           MR. DRATEL:  I'm sure Mr. Dratel has told you about

14   them.  This book is a big book.  It's about 500 pages long, so

15   I'm not going to go into it in detail; but the point is this:

16   There is a commission that issues this book.  It issues a new

17   addition each year.  That commission is made up you lawyers,

18   judges and other experts in the field.  This book is designed

19   to give guidance to me, to judges like me.

20           So, for every crime or type of crime, there is a

21   chapter in this book.  The judge is directed to go to the

22   relevant chapter and make findings of fact.  In this case, I'd

23   go to the chapter that is drug offenses.  I would make findings

24   as to what type of drug was involved.  In this case.  It's

25   marijuana.  Marijuana is generally considered less serious than

1    heroin or crack cocaine or methamphetamine.  So, I will make a

2    finding as to the type of drug.

3         I will make a finding as to the amount of drug

4    because, obviously, a lot of drugs are generally more dangerous

5    and more harmful than a small amount of drugs.  So, depending

6    on the amount of drugs that I find, I will assign points.  This

7    amount of marijuana will get this number of points according to

8    this book.

9         I will then make findings as to whether you played a

10   role in this that was a leadership role, in which case I'll add

11   points or maybe you had a minor role, in which case I would

12   subtract points.  If there were guns involved, I would add

13   points.

14        Anyway, I will go through this process of adding and

15   subtracting, and I will come up with a number.  That number is

16   what's referred to as the offense level.

17        I will then go to a different chapter in the book that

18   relates to criminal history.  Not surprisingly, people who have

19   previously committed crimes are generally going to be treated

20   more harshly than people who have no prior record.  I will look

21   to see if you have prior convictions.  If so, when they were.

22   If you do have prior convictions, I will look to see how long

23   the sentence was.  Based on those findings, I will add points

24   and come up with another number.  That number is called the

25   Criminal History Category.

E2jQbasP                         Plea

1          There are six categories, Category I is the lowest and

2     least serious.  Category VI is the highest and most serious.  I

3     will then take those two numbers I found:  The offense level on

4     one hand and the Criminal History Category on the other, and

5     then I will go to the back of this book where there is a chart

6     or a table, and I will go down the grid.  I'll go down this

7     column here, which is the offense level.  Then I will go across

8     till I find the right criminal history category.  Where the two

9     intersect, that is the spot that according to the commission

10    that writes this book says is the proper range for you to be

11    sentenced.  There are ranges in terms months laid out in here.

12         I will consider that and I will make my findings as to

13    what the guidelines call for in the case.  I am ultimately free

14    to disregard the guidelines.  I can go higher or lower than the

15    range they prescribed.  But I have to go through the exercise

16    of making my findings, deciding the offense level, deciding the

17    criminal history category and deciding what the range is.  If I

18    want to go higher or lower, I can, and I will explain myself.

19    OK?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Any questions about the guidelines in this

22    book?

23              THE DEFENDANT:  No, not -- I have no questions.

24              THE COURT:  I'm sure Mr. Dratel was pretty thorough on

25    this, but it can be complicated, sort of like accounting, but

 1   it's generally pretty straightforward.

 2                THE DEFENDANT:  I have one question.

 3                THE COURT:  Sure.

 4                THE DEFENDANT:  I heard -- I don't know if it's a

 5   rumor or not -- is there supposed to be a guideline change?

 6                THE COURT:  Well, there are sometimes changes every

 7   year, but with respect to marijuana?

 8                THE DEFENDANT:  No, with anything.  I don't know if

 9   it's just a rumor that they're supposed to fix the guidelines a

10   little bit or is that just a rumor?

11                THE COURT:  Well, I don't know specifically what

12   you've heard, but every year the commission takes testimony.

13   They listen to people.  They consider whether they should amend

14   certain guidelines.  So, they may be considering making some

15   changes, but I will sentence you based on the book that's in

16   effect at the time of your sentencing.  So it will be this one.

17                THE DEFENDANT:  OK.

18                THE COURT:  It will be the red cover; probably not

19   this one, which was last year's version.  I don't think there

20   has been any meaningful change between last year and this year

21   with respect to marijuana.

22                THE DEFENDANT:  OK.

23                THE COURT:  If something changes, then we will deal

24   with it at the time.  OK?

25                THE DEFENDANT:  OK.

1          THE COURT:  Any other questions about any other

2     sentencing factors?

3          THE DEFENDANT:  No.

4          THE COURT:  I guess the last point I want to make is

5     whatever sentence I impose, Mr. Basciano, even if you are

6     unhappy with it, you won't be able to withdraw your guilty plea

7     at that point.  Do you understand that?

8          THE DEFENDANT:  Yes, I understand.

9          THE COURT:  I said before that we haven't yet crossed

10    the point of no return, which is true; but once you've pled

11    guilty, and once I've accepted your guilty plea, you can't

12    ordinarily say, "I've changed my mind, I'd like to go back and

13    go to trial."  And, certainly, you won't be able to wait until

14    after I've sentenced you to say, "Oh, boy, that's more than I

15    bargained for.  Let's do this over."  That's not going to be an

16    option.  Do you understand that?

17         THE DEFENDANT:  I understand.

18         THE COURT:  I want to take a minute now to talk about

19    the plea agreement in this case.  I have a draft agreement

20    which is dated February 10 of this year.  It's a six-page

21    document, signed by Ms. Mermelstein and her supervisor.  It's

22    addressed to Mr. Dratel.  Do you have the original?

23         MR. DRATEL:  I have the original.

24         THE COURT:  Keep it there.  I'm going to ask some

25    questions about it.  Thanks.  If you could turn to the last

E2jQbasP                         Plea

1   page of that agreement, there is a signature line there at the

2   very bottom.  Is that your signature there, Mr. Basciano?

3              THE DEFENDANT:  Yes, it is.

4              THE COURT:  Before you signed this agreement, did you

5   read it?

6              THE DEFENDANT:  Yes, I did.

7              THE COURT:  Did you discuss it with Mr. Dratel?

8              THE DEFENDANT:  Yes, I did.

9              THE COURT:  Did you have a full opportunity to discuss

10  with him this agreement and what it means in your case?

11             THE DEFENDANT:  Yes, I did.

12             THE COURT:  Did you ask Mr. Dratel any questions that

13  you may have had?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Mr. Dratel, is that your signature below

16  Mr. Basciano's?

17             MR. DRATEL:  Yes, your Honor.

18             THE COURT:  Before you signed it, did you read it with

19  your client?

20             MR. DRATEL:  Yes I did.

21             THE COURT:  You were able to answer any questions he

22  may have had?

23             MR. DRATEL:  Yes.

24             THE COURT:  If you could hand that up, I will mark it

25  as Court Exhibit 2.  I will initial and date it.  I generally

E2jQbasP                    Plea

 1   give the original back to the government, but if you folks have

 2   a different arrangement, that's fine with me.  This way there

 3   will be no dispute as to what document we were talking about in

 4   case there is ever a question about that.

 5        Mr. Basciano, I am not going to go over this in great

 6   detail.  It's six pages single-spaced; not nearly as long as

 7   this thing, the guidelines, but it's still pretty long.  There

 8   are a couple of features of this I want to make sure you

 9   understand.  This agreement is an agreement between and you the

10   government.  Do you understand that?

11        THE DEFENDANT:  Yes.

12        THE COURT:  So, you have obligations under this

13   agreement and so does the government.  It's like a contract of

14   sorts.  I am not a part of this agreement.  I didn't sign it.

15   I didn't negotiate it.  And I'm not bound by it.  Do you

16   understand that?

17        THE DEFENDANT:  Yes.

18        THE COURT:  There may be things in this agreement that

19   I don't agree with; that I would come to a different

20   conclusion.  If that is the case, then I have an obligation to

21   follow my own view as to what the facts are and what the law

22   is.  Do you understand that?

23        THE DEFENDANT:  Yes.

24        THE COURT:  One of the features of this agreement is

25   that you agree -- you and the government agree as to how the

1    Sentencing Guidelines apply in this case?  Do you understand

2    that?

3              THE DEFENDANT:  I didn't hear that.  What was that?

4              THE COURT:  There is a part of this agreement that

5    sets forth the view of the government and you as to how these

6    Sentencing Guidelines apply in this case.  You're aware of

7    that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  According to the agreement, the offense

10   level is 21, and the criminal history category is Category III.

11   Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Based on those agreements, there is an

14   agreement that the range, according to this book is 46 to 57

15   months imprisonment.  Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  That might be the agreement you have

18   reached with the government, but, again, I'm not bound by that.

19   So I may reach a different conclusion.  I may find that the

20   guidelines are higher, I may find that they're or lower, or

21   whatever the guidelines, I may decide that a different sentence

22   is appropriate.  Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Part of this agreement also says if I

25   sentence you to 57 months imprisonment or anything less than,

E2jQbasP                        Plea

 1   that you will give up your right to appeal the sentence or

 2   challenge the sentence.  Do you understand that?

 3           THE DEFENDANT:  Yes.

 4           THE COURT:  So, it may not be that you're happy with

 5   the sentence; that you're hoping for less; but if I sentence

 6   you to 57 months, which is just a shade under five years or

 7   anything less than that, you won't be able to appeal the

 8   sentence.  Do you understand that?

 9           THE DEFENDANT:  Yes.

10           THE COURT:  There is also part of this agreement that

11   says you agree to forfeit the proceeds from this crime.  Do you

12   understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  I think it says $600,000 is the total

15   forfeiture amount.  Is that right?  Do you understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Now, is there any agreement besides this

18   one in a exists between you and the government?

19           THE DEFENDANT:  No.

20           THE COURT:  Has anything been left out of this

21   agreement?  Is there any understanding that you have with the

22   government that isn't contained in that agreement?

23           THE DEFENDANT:  No.

24           THE COURT:  Has anyone threatened you or promised you

25   something of value in exchange for signing that agreement?

1           THE DEFENDANT:  No.

2           THE COURT:  Has anyone threatened you or promised you

3  something of value in exchange for pleading guilty here today?

4           THE DEFENDANT:  No.

5           THE COURT:  Mr. Dratel, is there any defense that you

6  can think of that would prevail as a matter of law or any other

7  reason why Mr. Basciano should not be allowed to plead guilty

8  today?

9           MR. DRATEL:  No, your Honor.

10          THE COURT:  Mr. Basciano, at this point I want you to

11 tell me in your own words what it is that you did that makes

12 you guilty of this crime.

13          THE DEFENDANT:  I sold marijuana with others and --

14 that was a mistake pretty much I made, I sold marijuana to

15 others.

16          THE COURT:  When was this, approximately?

17          THE DEFENDANT:  That was 2012, the beginning of 2012.

18          THE COURT:  Where did this take place?

19          THE DEFENDANT:  In the Bronx.

20          THE COURT:  In the Bronx, OK.

21          And the amount of marijuana involved in this

22 conspiracy, in this agreement, was it more than 50 kilograms

23 which is about 140 pounds?

24          THE DEFENDANT:  I would say, honestly, a little bit

25 less, but, yeah, it was somewhere around there.  It was a

1    hundred to 120 pounds, 130 pounds, hundred 230 pounds.

2             THE COURT:  So, that could have an impact on the

3    sentence just because there's a 50-kilogram threshold for some

4    of the penalties that you face here?

5             THE DEFENDANT:  I don't know the exact what it was,

6    but it was somewhere around 70, 80, a hundred, somewhere around

7    there.

8             THE COURT:  All right.  When you did this stuff, did

9    you know what you were doing was wrong and illegal?

10            THE DEFENDANT:  Yes, I did.

11            THE COURT:  You did.  OK.  All right.  Other than the

12   weight allocution which could have some implications i,s that a

13   satisfactory allocution, Ms. Mermelstein?

14            MS. MERMELSTEIN:  Yes, your Honor.

15            THE COURT:  Mr. Dratel?

16            MR. DRATEL:  Yes, your Honor.

17            THE COURT:  So, let me hear now from the government

18   particularly with respect to weight because that could be an

19   issue, it seems to me, with respect to sentencing.

20            MS. MERMELSTEIN:  If this case proceeded to trial, the

21   government would prove through cooperating witness testimony,

22   other witness testimony, seized marijuana and consensually

23   recorded calls and in person conversations his with the

24   defendant himself, that from approximately 2012 to

25   approximately April of 2013 the defendant agreed with others to

E2jQbasP                        Plea

1   purchase marijuana which had been shipped from California to

2   the New York area for sale in a marijuana route that was run in

3   the Bronx.  In particular, he purchased that marijuana from

4   Salvatore Larca to Anthony @Soquillo.  The government has

5   witnesses who would testify based on personal knowledge that

6   this defendant personally purchased at least 50 kilos of

7   marijuana from the conspiracy, and that the conspiracy itself

8   involved more than that.  I will just note a mathematical

9   error.  I think 50 kilos is 110.

10              THE COURT:  It's 2.2.

11              MS. MERMELSTEIN:  So to the extent that solves the

12  amount of the discrepancy.  I don't know if it does for the

13  defendant, but I think he only has to allocute that it was.

14              THE COURT:  So, 110 pounds is that about right?

15              THE DEFENDANT:  Yeah, somewhere around that range.

16  Yes.

17              THE COURT:  So you're not certain, but you think it is

18  in that neighborhood?

19              THE DEFENDANT:  To be honest with you, I thought it

20  was a little bit less, but, yes, your Honor.

21              THE COURT:  So Jimmy Carter would be unhappy with my

22  math.  All right.

23              OK.  So at this point then let me understand.  OK

24  Mr. Basciano?  I am going to ask you now to stand.  How do you

25  now plead to Count One of the superseding indictment?  Guilty

E2jQbasP                         Plea

```
 1   or not guilty.
 2               THE DEFENDANT:  Guilty.
 3               THE COURT:  Did you do the things you're charged with
 4   doing in the indictment?
 5               THE DEFENDANT:  Yes.
 6               THE COURT:  Are you pleading guilty because you are
 7   guilty?
 8               THE DEFENDANT:  Yes, ma'am.
 9               THE COURT:  Are you pleading guilty voluntarily and of
10   your own free will?
11               THE DEFENDANT:  Yes.
12               THE COURT:  Mr. Basciano because you acknowledge you
13   are guilty as charged in Count One, because you know your
14   rights and have waived those rights, because your plea is
15   entered knowingly and voluntarily and is supported by an
16   independent basis in fact for each of the elements of the
17   crime, I accept your guilty plea and I adjudge you guilty on
18   Count One.
19               Have a seat.  What we are going to talk about now, we
20   are going to now set a date for sentencing, which generally I
21   set those about four months out.  That is to allow the
22   probation department to prepare a report, PSR or a presentence
23   report.  That report can be pretty lengthy.  That can be
24   sometimes 20, 30, 40 pages long, single-spaced.  It's really to
25   help me decide an appropriate sentence.  So I want to give them
```

1    time to prepare that report.  So, Chris, what time?

2              THE DEPUTY CLERK:  3:00 p.m. on June 20.

3              THE COURT:  I will need more than an hour.  There is

4    other one is at 2:00?

5              THE DEPUTY CLERK:  Yes.

6              THE COURT:  In the morning or no?  How about Friday,

7    the 27th?  Is that all right?  10:00 in the morning.

8              MR. DRATEL:  10:00 a.m.?

9              THE COURT:  Yes, 10:00 a.m. on Friday, June 27.

10             So, in the interim between now and then, what is going

11   to happen, Mr. Basciano, is the probation department is going

12   prepare this report.  Once they do -- well, I will tell you,

13   they are going to get information for this report by talking to

14   a lot of people and by reviewing a lot of documents.  Among the

15   people they interview will be you.

16             Mr. Dratel, I assume you want to be present for any

17   interview?

18             MR. DRATEL:  I do, your Honor.

19             THE COURT:  So, I will direct no interview will take

20   place unless Mr. Dratel is present.

21             During that interview, Mr. Basciano, I expect you will

22   be truthful and complete in your answers to the probation

23   department.  If you were to make any false statements to

24   probation, well, that would be a separate crime.  That would be

25   punishable by separate penalties, and also could be an

1   enhancement under the guidelines of this case for obstruction

2   of justice, which means the guidelines will go up, which would

3   not be in anyone's interest.

4           Again, I don't say that to scare you; just so you're

5   mindful to be truthful and complete in all your answers to the

6   probation department.

7           Once the report is finished, you will get a draft.

8   Probation will send you a draft, they will send your lawyer and

9   the government's lawyer a draft.  Read it carefully.  If there

10  are parts of the draft that you disagree with, tell Mr. Dratel.

11  He will then contact probation and say, "Hey, we disagree with

12  this, that and the other."  Probation will issue a final report

13  after that.  The final report might incorporate the changes

14  that Mr. Dratel pointed out; perhaps not.  In any event, once

15  you get the final report -- that is the first one I will get --

16  you will get a copy as well.  Read it carefully.  If there are

17  parts of it you disagree with, talk to Mr. Dratel.  Mr. Dratel,

18  if there are parts you disagree with, will then make objections

19  formally to me.  Ms. Mermelstein will have the same

20  opportunity.

21          If there are objections to the report or portions of

22  the report, then I will resolve those disputes.  We will either

23  have like a mini-trial with witnesses, and then I will make

24  findings of fact, or it may be that the dispute is not so much

25  over what the facts are but what the inferences or conclusions

E2jQbasP                          Plea

1    are to be drawn from those facts.  So, if that is the case,

2    then perhaps there should be argument from the lawyers, and

3    then I will resolve it after the argument.

4             I suppose the third alternative is that there might be

5    an objection, but it is about something that I just think is

6    trivial that won't matter and that won't affect the sentence so

7    I won't need to resolve it, and I will say we can put that to

8    one side, we don't have to deal with it.  In any event, if

9    there are objections, I will resolve them or I will tell you

10   what I am doing with them.

11            In addition to the presentence report, I will also

12   review any submissions from the parties.  So, Mr. Dratel, I am

13   sure, will be making a submission on your behalf, indicating

14   his view as to what the proper sentence should be and why.

15   Ms. Mermelstein will have the same opportunity.  I suspect the

16   government will make a submission also.  I will read those

17   carefully, of course.

18            In addition to those, I am happy to read letters or

19   submissions from anybody else.  I don't know you well,

20   Mr. Basciano.  I've only seen you a couple times.  So,

21   sometimes defendants think it's useful to have friends, family

22   members or the defendant himself write a letter to the court to

23   give me a better sense of you as a person.  So, I certainly

24   read the letters and I find they can be quite useful.  If that

25   is something you'd like to do, you are certainly welcome to do

E2jQbasP                    Plea

1    that.  The only thing I would ask is that if you, your friends

2    or relatives wish to write letters to me, have them go to

3    Mr. Dratel first.  Send him all the letters.  He will collect

4    them.  He will make them part of his attachments, and I will

5    get them all at once, so I can be confident nothing has slipped

6    through the cracks.

7            I promise I will read them, I always do, more than

8    once, in fact, because they're important.

9            We will then come in here on June 27, sentencing day,

10   and at that time we will go over the presentence report with

11   your objections, which I will resolve.  I will then make my

12   findings under the guidelines.  I will tell you what range I

13   come up with.  After that, I will listen to the lawyers.  I

14   will give them a chance to speak about what would be an

15   appropriate sentence.  Once they have finished, I will give you

16   an appropriate to speak if you would like to.  You are not

17   required to but you are very welcome to and you have a right to

18   speak if you's like, so I will give you that chance.

19           After all of that, then I will tell you the sentence

20   that I intend to impose.  I will then explain my reasons for

21   it.  I will then check with the lawyers to make sure that I

22   haven't done anything illegal; and assuming that I haven't,

23   then I will formally impose the sentence.  That is how it will

24   work.  OK?

25           THE DEFENDANT:  OK.

E2jQbasP                          Plea

1          THE COURT:  Any questions about that process?

2          THE DEFENDANT:  No.

3          THE COURT:  In the meantime, you are going to remain

4    in custody, but you will get credit for the time between now

5    and June and will count toward whatever sentence I impose.

6          So, stay in touch with Mr. Dratel.  If the date

7    changes, he will let you know.  Otherwise, I will see you on

8    June 27.  OK?

9          THE DEFENDANT:  OK.

10          THE COURT:  Good luck to you.

11          THE DEFENDANT:  Thank you.

12          THE COURT:  I will see you then.

13          Let me thank the marshals, and let me thank the court

14    reporter as well.

15          MR. DRATEL:  Your Honor, I just don't recall if it is

16    in your individual rules as to how far in advance of sentence--

17          THE COURT:  It is.  I think I generally like the

18    defense submission two weeks before, and the government's a

19    week before, so I can then have a week to read everything and

20    think about it.  There is usually a weekend in there, so that

21    is usually when I do a lot of my thinking on sentencing.

22          Less than that, I don't feel I have enough time to
     devote to it.  There is nothing more important than sentencing,
23    Mr. Basciano.  So I take it seriously.  You can also
     overprepare in advance, and so generally I find that time works
24    for me.  OK.  Great.  Have a good day.
          (Adjourned)

25