

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*United States Courthouse*
*1 St. Andrews Plaza*
*New York, New York 10006*

June 23, 2014

**BY EMAIL AND ECF**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10006

      Re:    **United States v. Stephen Basciano**,
              S7 13 Cr. 340 (RJS)

Dear Judge Sullivan:

      The Government respectfully submits this letter in connection with the sentencing of defendant Stephen Basciano, which is scheduled for July 9, 2014 at 2:00 p.m.  In light of the defendant's connections to organized crime, his prior violent criminal conduct, and the nature of the instant offense, the Government respectfully submits that the Court should sentence the defendant within the currently applicable Guidelines range of 46 to 57 months' imprisonment.  A Guidelines sentence is entirely appropriate to promote respect for the law, protect the public, and to deter and punish the defendant's criminal conduct.

    I.      **Background and Offense Conduct**

      As detailed in the Presentence Investigation Report ("PSR"), the defendants in this case were involved in the large scale purchase, transportation and sale of marijuana.  Certain defendants procured large quantities of marijuana in California for shipment to New York.  (PSR ¶¶ 18-24).  The marijuana was sent to, among others, co-defendant Salvatore Larca, a Genovese soldier, for further distribution.  (PSR ¶ 22).  This defendant procured marijuana from Larca, typically in 30 to 40 pound increments, for further distribution on the defendant's (and his brother Vincent Basciano's) marijuana route.  (PSR ¶ 26).  The route, which was operational for at least several years, sold at least 2 pounds of marijuana per week.  (PSR ¶ 26).

      On September 17, 2013, a grand jury returned an indictment, which charged the defendant with one count of conspiring to distribute more than 100 kilograms of marijuana in violation of Title 21, United States Code, Sections 846 841(a)(1) and 841(b)(1)(B).  On September 18, 2014, the defendant was arrested and detained. Thereafter, on January 30, 2014, a grand jury returned a superseding indictment, which charged the defendant with one count of

Hon. Richard J. Sullivan
June 23, 2014
Page 2 of 4

conspiring to distribute more than 1,000 kilograms of marijuana, in violation of Title 21, United States Code, Sections 846 841(a)(1) and 841(b)(1)(A).

## II.    Plea Agreement and Criminal History

On February 19, 2014, the defendant pled guilty, pursuant to a Plea Agreement (the "Plea Agreement"), to the lesser included offense of conspiracy to distribute more than 50 kilograms of marijuana, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C).  Because the offense involved 80 to 100 kilograms of marijuana, the Plea Agreement calculated an offense level of 21.  (PSR ¶ 3).

The Plea Agreement also concluded that the defendant's criminal history put him in Criminal History Category III.  (PSR ¶ 3).  At offense level 21, and Criminal History Category III, the defendant's stipulated Guidelines range is 46 to 57 months' imprisonment.  (PSR ¶ 3).

## III.    The Court Should Sentence Basciano Within the Current Guidelines Range

The Government respectfully submits that sentence within the current Guidelines[1] is appropriate for this defendant.

The details of the defendant's criminal history, coupled with his own statements on certain consensually recorded conversations raise serious concerns about his respect for the law and his propensity for violence.  The defendant has two convictions for the unlicensed operation of a motor vehicle.  Significantly, during the first incident he attempted to bribe a police officer by offering the officer cash not to give him a ticket.  (PSR ¶ 60).  During the second incident – in 2006 (and thus prior to the inception of the present conspiracy) – the defendant not only drove into incoming traffic, he was found in possession of marijuana.  (PSR  ¶ 64).

Perhaps more disturbing is the defendant's demonstrated propensity for violence.  The defendant was convicted after a jury trial of assault, after he struck the victim in the face with a brick.  Notwithstanding a sentence of two and a half years, while still on parole from that conviction, the defendant became involved in the present conspiracy.

In addition to the conduct for which he has been charged, during the investigation of the pending matter, the Government obtained consensually recorded conversations during which Stephen Basciano discusses his prior possession of firearms, his having shot at other individuals, and his fear that once in a possession of a weapon, his temper might get the better for him.  For example, the defendant engaged in the following conversation with the Government's cooperating witness ("CW").

---

[1] The defendant has not yet filed his sentencing submission, and accordingly, the Government does not yet know whether he will seek credit for the anticipated 2-point reduction to Section 2D1.1 of the Sentencing Guidelines.  As the Court is aware, pursuant to Department of Justice policy, the Government has taken the position that certain defendants should receive a downward variance in order to effectuate the pending Guideline amendment to § 2D1.1. The Government does not, however, believe that a downward variance is appropriate for defendants like Basciano who have ties to organized crime, have a significant criminal history, and who have engaged in violent behavior.

Hon. Richard J. Sullivan
June 23, 2014
Page 3 of 4

| | | |
|---|---|---|
| Basciano: | | Bro . . . like a month ago, I had [expletive] serious guns, I threw like seven of them in a swamp. |
| CHS: | | The swamp? . . . What do they go for anyway? |
| Basciano: | | Those? |
| CHS: | | Yeah. |
| Basciano: | | I had that [expletive] for like [expletive] eight years. |
| CHS: | | I haven't even seen a silencer, like ever in my life. |
| Basciano: | | Bro, I had that [expletive] Bro.  I had it at a girl's house for three years, she wanted it out Bro, I moved that [expletive] I had in my house . . . |
| CHS: | | That's 20 years automatic . . . |
| Basciano: | | I had that [expletive] for one day, I was like [expletive] this [expletive] Bro. Bro, I tossed all of them Bro, it ain't even worth it, cause I'm not gonna use it. Why [expletive] have that [expletive], if they [expletive] come in my house for pot and they find that . . . |

                                          ***

| | | |
|---|---|---|
| Basciano: | | You hear a lot of [expletive] though, you hear, you get caught with a gun . . . with thirty bullets . . You heard that right? Bro, in all honesty Bro, when it comes down to it, once you get caught, they can do whatever they want Bro, they drop it half of the time. You find people that got arrested for the same thing Bro, they both could have one felony for the same thing.  One [expletive] courtroom will give you [expletive] three years, the other [expletive] courtroom will give you like seven. Once you get in there Bro, you never know these changes.  [Expletive], I remember, before I went to jail Bro, I had them, I was going [expletive] crazy with them Bro, shooting at people Bro.  When I get hot-tempered Bro, I [expletive] you never know what could happen. I [expletive] shoot someone, I hit them in the wrong spot, I [expletive] kill them Bro, could get life for that [expletive]. Once I get hot-headed Bro, [expletive] I blank out for like two hours. |
| CHS: | | . . . What if you're not even going to [expletive] kill them, what if you're just going . . . |
| Basciano: | | Shoot them in the leg, I was just thinking about it. |
| CHS: | | And they get an artery or something and they're dead. |
| Basciano: | | I swear to God I was just gonna say that. |

| | |
|---|---|
| CHS: | And you get life in jail. |
| Basciano: | That was my [expletive] mentality before I went to jail Bro. I used to try to [expletive] shoot people in the [expletive] leg. I really did Bro, I shot at like three people Bro (laughing) and then [expletive] I was like taking that whole time Bro. |
| CHS: | Did they ever rat you out or no. |
| Basciano: | No, I never hit 3 people, I never hit [expletive] one person Bro. I shot at [expletive] people when they were in the doorway like 8 times before they could get away (laughing). |
| CHS: | (Laughing) For what, for no reason? |
| Basciano: | No, just for [expletive] arguments, one was over [expletive] a girl, Bro, [expletive] dumb [expletive][expletive].  You hang out with Carl [Ulzheimer], have you talked to Carl? |
| CHS: | I haven't seen him, I seen Dom [Dominick Deluccia] the other day, why, you want to get ahold of him? |
| Basciano: | No, just wondering where he been. What are you doing today Bro? |
| CHS: | I think he's laying low with that whole [expletive], you know that Vinny Bruno story with him, you heard? |
| Basciano: | I don't know what it was, I heard something [expletive] he tried to find . . . |
| CHS: | You believe that or no? |
| Basciano: | No, not that kid Roast Beef [Paulie Cassano], I can't see him doing something like that. I really can't.  I could see them [expletive] maybe going to his house and maybe [expletive] fake doing it, like I used to try to do, and try to shoot them in the leg.  I can't see them [expletive] doing that though . . .[2] |

---

[2] The CHS and Basciano are discussing the fall out of an incident in which Vincent Bruno, Ernie Aiello (underboss of the Bonanno crime family), Dominick Deluccia, and others got into an altercation at a Lucchese crime family social club.  As a result of the altercation, Cassano, a Lucchese associate (and possible soldier), and Vincent Bruno were sent to kill Carl Ulzheimer.  Bruno and Cassano went to Ulzheimer's house on at least two occasions to shoot him, but were unable to find him.  Basciano says that he can't see Cassano actually killing Ulzheimer, and that Cassano was more likely to "merely" shoot Ulzheimer in the leg, as Basciano used to do.  The CHS says he can see Vincent Bruno killing Ulzheimer because Bruno wanted to become a made member of the mafia.

Hon. Richard J. Sullivan
June 23, 2014
Page 5 of 4

| | |
|---|---|
| CHS: | I know. Vinny I could see it a little bit, only cause he wanted [expletive] to be straightened out [become a made member of the mafia] more than anything, but . . . |
| Basciano: | Yeah |
| CHS: | Imagine he would've opened the door, and you know what I mean. |
| Basciano: | He'd be done. |
| CHS: | I had conversations with Vinny about stupid [expletive] like that. |
| Basciano: | He'd never be getting out again. It's a shame. [Expletive], back in the day Bro. You get caught, one person knows about it Bro, even if they had nothing to do with it, they [expletive] give you up. The only time you get away with [expletive] like that is in the early eighties Bro, maybe in the early eighties Bro, when that [expletive] was strong. When people don't . . . like I know a little less about ratting. Bro, if I were ever to do something like that Bro, I would never go with one soul, I would do it by myself Bro, and [expletive] not tell anybody . . . that's the only way to get away with something like that bro. |
| CHS: | That's the way your [expletive] father got [expletive] Bro, he should have just did everything by himself. |
| Basciano: | Well, he was with [expletive] all old school dudes . . . |

       Taken together with his prior criminal history and his conduct in the instant offense, the above conversation makes clear that Basciano has a demonstrated willingness to engage in violence and has been undeterred by prior terms of incarceration.  Accordingly, a Guidelines sentence of 46 to 57 months' imprisonment is appropriate for this defendant.  Such a sentence is reflective of the seriousness of his criminal conduct and would also help protect the public from the sort of serious criminal behavior in which the defendant was involved.

Hon. Richard J. Sullivan
June 23, 2014
Page 6 of 4

### IV.     Conclusion

      For the foregoing reasons, the Government respectfully submits that the Court impose a sentence within the Sentencing Guidelines range of 46 to 57 months, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    Respectfully submitted,

    PREET BHARARA
    United States Attorney


By: _____/s/_____
    Rebecca Mermelstein
    Peter Skinner
    Assistant United States Attorneys
    Southern District of New York
    (212) 637-2360/2601

cc: Joshua Dratel, Esq.