LAW OFFICES
# Mark S. DeMarco
2027 WILLIAMSBRIDGE ROAD
SECOND FLOOR
BRONX, NEW YORK 10461
MSDLAW@AOL.COM

TELEPHONE
(718) 239-7070

FACSIMILE
(718) 239-2141

October 1, 2014

The Honorable Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

**BY ELECTRONIC & U.S. MAIL**

**TO BE FILED UNDER SEAL**

          Re: *United States v. Matthew Strock*
             13 Cr. 340 (RJS)

Your Honor:

**Mr. Strock's Cooperation and Substantial Assistance**

  Matthew Strock cooperated with the government and provided significant information and substantial assistance regarding dangerous individuals such as Vincent Bruno, Salvatore Larca and Vincent Basciano Jr. His decision to cooperate and to testify if necessary was not without serious risk of physical harm to Mr. Strock and his family. Indeed, in its sentencing memorandum filed on January 22, 2014, in the case of *United States v. Vincent Bruno, 13 Cr. 120 (KMW)*, the government writes that "Bruno assisted Salvatore Larca, a member of the Genovese organized crime family, in the procurement and distribution of marijuana. Larca has distributed marijuana in the Bronx for years."

  Further, in that same memorandum the governments seeks a lengthy prison sentence for Bruno, contending that:

> The seriousness of Bruno's conduct is beyond dispute. He led a cocaine delivery route that brought cocaine to the doors of customers throughout the Bronx, distributing roughly four kilograms of cocaine in total. He was also a key player in a marijuana trafficking ring that flooded the Bronx and Westchester with thousands of pounds of marijuana. And he used violence to further his criminal activities — beating a cooperating witness with a pipe when he believed that the witness had called Bruno's credibility on the street into question. The nature and seriousness of Bruno's conduct, as well as the need for just punishment, thus warrant a lengthy term

Hon. Richard J. Sullivan
October 1, 2014

    of imprisonment.

  Mr. Strock's cooperation began shortly after he was arrested and months before he formally executed his cooperation agreement and pleaded guilty before this Court. In July 2013, roughly two months after the above-referenced indictment was filed and more than two months prior to his guilty plea pursuant to a cooperation agreement[1], Mr. Strock met with prosecutors and agents from the Federal Bureau of Investigation ("FBI") for the first of several proffer sessions. During this and all subsequent meetings with the government, Mr. Strock completely and truthfully disclosed his own wrongdoing and that of others, and provided the government with valuable information and evidence regarding other individuals' criminal conduct which permitted the agents to explore additional investigations.

  Indeed, as set forth in the government's letter submitted pursuant to *Section 5K1.1* of the *Sentencing Guidelines*:

> Shortly after his arrest, [Mr.] Strock agreed to cooperate with the Government. From the beginning, Strock was extremely forthcoming with the Government and provided truthful information that corroborated the Government's evidence against his co-defendants and permitted the Government to bring charges against additional individuals. Specifically, [Mr.] Strock provided detailed and specific information about the quantities of marijuana shipped to Salvatore Larca – information on which the Government relied in declining to offer Larca a plea to less than 1,000 kilograms of marijuana. [Mr.] Strock also provided significant information about (i) the involvement in the marijuana conspiracy of the individual identified as Ken LNU, a/k/a "Rabbit," and subsequently identified by law enforcement as Kenneth Owen; (ii) Strock's provision of significant quantities of marijuana to George Kokenyei; (iii) Strock's provision of marijuana to Vincent Bruno, and Strock's meetings with Bruno in California to coordinate those shipments; and (iv) Strock's shipment of marijuana to Vincent Basciano.
>
> In part based on the information provided by Strock, (i) on or about September 17, 2013, the Government returned a superseding indictment charging Vincent Basciano, George Kokenyei and others with conspiring to distribute marijuana; (ii) on or about October 22, 2013, the Government obtained a superseding information charging Vincent Bruno with participating in a marijuana trafficking conspiracy; and (iii) on or about January 14, 2014, the Government returned a superseding indictment

---

[1] On September 24, 2013, Mr. Strock pleaded guilty, pursuant to a cooperation agreement, to conspiring to distribute more than 1000 kilograms of marijuana in violation of *21 U.S.C. § 841 (b)(1)(A)*.

Hon. Richard J. Sullivan
October 1, 2014

charging Kenneth Owen, a/k/a "Rabbit," with conspiring to distribute marijuana. All of the defendants have pled guilty, and many have been sentenced.

Mr. Strock's cooperation provides significant insight into his character and resolve to make amends for his criminal behavior and to salvage his life. *See, Roberts v. United States, 445 U.S. 552 (1980)* (Cooperation is a "laudable endeavor that bears a rational connection to a defendant's willingness to shape up and change his behavior"). He was prepared to testify for the government at any proceeding, if called upon to do so. Mr. Strock's availability to testify and the information that he provided to the government were crucial components to the government's ability to secure convictions against others. His truthful information also enabled the government to fashion appropriate plea agreements for his co-defendants and for this Court to impose the appropriate sentences.

Mr. Strock is scheduled to be sentenced on October 29, 2014, and this letter is submitted to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by *18 U.S.C. § 3553(a)* in light of *United States v. Booker*, 543 U.S. 220 (2005) and its progeny.

Here, Mr. Strock respectfully requests that the Court consider several important circumstances of this case in fashioning a sentence. First and most importantly, we ask this Court to take into consideration Mr. Strock's cooperation with the government, where he provided substantial and important information and assistance to the government. We also ask that this Court consider Mr. Strock's background in fashioning an appropriate sentence.

We respectfully submit that these circumstances warrant a sentence substantially below the statutory minimum sentence applicable to this case. We, therefore, urge Your Honor to impose a sentence of time served, an appropriate sentence satisfying the objectives embodied in *Booker* and *§ 3553(a)*.

**Application of the Section *3553(a)* Factors Calls for a**
**<u>Sentence of Time-Served.</u>**

A court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the Guidelines. *18 U.S.C. § 3553(a)*. The Guidelines range is the "starting point and the initial benchmark." *United States v. Johnson, 567 F.3d 40, 51 (2d Cir. 2009) (quoting Gall v. United States, 552 U.S. 38 (2007))*. "A district court is authorized to depart from a Guidelines range if the court finds that 'there exists an aggravating or mitigation circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *United States v. Juvenile Male Po, 466 Fed. Appx. 14, 15 (2d Cir. 2012) (summary order) (citing 18 U.S.C. § 3553(b))*.

Hon. Richard J. Sullivan
October 1, 2014

> The Court, however, is to consider:
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed —
> >
> > > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > >
> > > (B) to afford adequate deterrence to criminal conduct;
> > >
> > > (C) to protect the public from further crimes of the defendant; and
> > >
> > > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> >
> > (3) the kinds of sentences available;
> >
> > (4) the kinds of sentence and the sentencing range established for —
> >
> > > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
> >
> > (5) any pertinent policy statement . . . [issued by the Sentencing Commission];
> >
> > (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> >
> > (7) the need to provide restitution to any victims of the offense.

*United States v. Boykins-Jenkins*, 09 Cr. 861-01, 2011 U.S. Dist LEXIS 107255, at * 2 *(S.D.N.Y. Sept. 22, 2011) (quoting 18 U.S.C. § 3553(a))*. The defense respectfully submits that a below-Guidelines sentence is appropriate here.

Hon. Richard J. Sullivan
October 1, 2014

## The Sentencing Factors As Applied to Matthew Strock

*18 U.S.C. § 3553(a),* and *United States v. Crosby*, *397 F.3d 103 (2d Cir. 2005)*, outline the task facing district courts in considering the guidelines. The court must determine the applicable guidelines range, and further consider applicable policy statements. After thus considering the guidelines, the Court must consider all the other factors set forth in *§ 3553(a)* before determining whether (i) to impose the sentence that would have been imposed under the guidelines, i.e. a sentence within the applicable guideline range or within permissible departure authority, or (ii) to impose a non-guideline sentence.

## Personal Characteristics

### Mr. Strock's Family

In addition to caring for his elderly parents, Mr. Strock was awarded custody of his teenage daughter Autumn in 2006 since her mother was unable to provide her with a stable home or financial support. Although Autumn is presently living with her mother in Los Angeles, she will return to the care of her father when he is released from prison, where she again will be provided with a stable home environment.

Moreover, Mr. Strock is the primary caregiver for his 83-year-old father who suffers from bladder cancer and his 68-year old mother, who also suffers from declining health. As set forth in the attached letters [**Defendant's Exhibit A**], Matthew, when at liberty, transported his father to San Francisco for his chemotherapy. His sister Darlene Bixler writes how their parents "rely on him almost daily for assistance as they are now older and their health is declining."

In this case, Mr. Strock, respectfully requests that Your Honor consider his family circumstances when fashioning an appropriate sentence. Although Mr. Strock is not a single parent, he is the primary source of income and stability for his daughter. In addition, he is the primary caregiver to his elderly parents. A prison sentence will jeopardize Mr. Strock's ability to maintain the family residence and for his daughter to return to his care. Further, his incarceration will prevent him caring for his parents, who are both afflicted with potentially debilitating health problems.

### Mr. Strock's Age and Physical & Emotional Health

As set forth in the Presentence Investigation Report ("PSR") and the attached medical records [**Defendant's Exhibit B**], Mr. Strock suffers from a tremor or seizure disorder and from Ehlers-Danlos Syndrome, a connective tissue disorder marked by loose joints, hyper-elastic skin and damaged blood vessels. As a result, he has sustained numerous ankle, knee and shoulder injuries and has undergone surgery on several occasions to repair these injuries. He has also been prescribed a laundry list of medications for his various ailments.

Since his incarceration, Mr. Strock, who will be 39 years-old when sentenced, has been under

5

Hon. Richard J. Sullivan
October 1, 2014

the care of a neurologist and cardiologist. He is currently taking several medication and is under the care of the MCC medical staff for these ailments and injuries.

Furthermore, Mr. Strock has and continues to struggle with depression, insomnia and anxiety and has attended counseling sessions with a therapist. During his incarceration, he has completed the "Going Out By Getting In" ("GOGI") self-help program. **See Defendant's Exhibit C, Certificate of Completion.**

While "[a]ge . . . is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." *Guidelines § 5H1.1* (Policy Statement), the Sentencing Reform Act provides that the Sentencing Commission "shall consider whether" various factors, including a defendant's physical condition, "have any relevance" to the "imposition of [a] sentence[] of . . . imprisonment," and that it "shall take th[ose factors] into account only to the extent that they do have relevance." *28 U.S.C. § 994(d)(5)*; *see United States v. Cutler, 520 F.3d 136 (2d. Cir. 2008)*.

Further, the Guidelines provide that "physical condition . . . is not *ordinarily* relevant in determining whether a sentence should be outside the applicable guideline range." *U.S.S.G. § 5H1.4* (emphasis added). However, as with other such "discouraged" grounds for departure, a departure is permitted for physical impairment where such a factor is present "to an exceptional degree." *United States v. Koon, 518 U.S. 81, 95-96 (1996)*. Indeed, § 5H1.4 expressly recognizes that "an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range. state that a defendant's "[p]hysical condition . . . is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range," *Guidelines § 5H1.4* (Policy Statement). It is often relevant, though not always controlling, whether the United States Bureau of Prisons ("BOP") can provide adequate care. *See United States v. Jimenez, 212 F.Supp 2d 214 (S.D.N.Y. 2002)*.

This case is truly extraordinary. Since his arrest, his emotional condition has worsened and when combined with his long list of physical ailments, makes him literally a different person than the one who committed the crimes charged here. He is mentally and physically weaker, and constitutes significantly less of a threat of law violation, than was the case previously.

Mr. Strock's incarceration would be far more difficult than that of a younger, stronger and emotionally more stable person. Indeed, despite federal authorities' concern for prisoners' welfare, an extended period of incarceration will be detrimental to Mr. Strock's health, resulting in a lessening of his present life expectancy.

What makes a physical impairment "extraordinary" for purposes of the Guidelines--as *§ 5H1.4* makes express in this instance--is whether it is an exceptional condition, of a type or to a degree not contemplated by the Commission in ruling that the normal variations of health and physical fitness among criminals are not ordinarily relevant to sentencing, whose severity bears in

Hon. Richard J. Sullivan
October 1, 2014

some way on the justifications for punishment. *See United States v. Jimenez, 212 F.Supp. 2d at 219.*

In this case it is apparent that the defendant's condition meets that standard. First, there is no question that Mr. Strock's physical condition is "exceptional," *Koon, 518 U.S. at 95*, and that he is "seriously infirm," *U.S.S.G. § 5H1.4*. His present health concerns are not relatively easily-controllable medical conditions. In addition, Mr. Strock's condition seriously erodes his capacity to threaten society. It is hard to imagine Mr. Strock committing any crimes in his present condition. Indeed, it is difficult to imagine a 39-year-old- man with assorted medical ailments, having the physical and mental capacity to commit additional crimes
.

Accordingly, as *§ 5H1.4* teaches, this is a case where imprisonment, which would otherwise be justified to protect the public, is wasteful and unnecessary. This brings us to the question of the extent of this Court's variance. Beyond question, some portion of the prison sentence recommended by the Guidelines in this case is based on rationales of incapacitation and special deterrence. These rationales are inapplicable here since Mr. Strock is radically less likely to commit further crimes than the typical person and, accordingly, the sentence should be reduced. Such a sentence is more than sufficient to carry out the goals of sentencing, to vindicate the law and provide deterrence. The sentence provided for in the guidelines, is not appropriate in this case, given the defendant's age and physical and mental infirmities.

### Mr. Strock's Post-Arrest Conduct

As set forth above, since his arrest Mr. Strock has cooperated extensively with the government. He has been compliant with United States Pretrial Service and has been a model prisoner since his incarceration. It should also be noted that since his incarceration he has been physically threatened by another inmate and he has been the victim of an attempted extortion by an inmate.

### Conclusion

For the reasons set forth above, the defense respectfully requests that this Court impose a sentence of time-served, which is "sufficient, but not greater than necessary" to comply with the goals set forth in *18 U.S.C. § 3553(a)(2)*. Such a sentence would reflect a just result given all of the facts and circumstances in this case.

Respectfully submitted,

Mark S. DeMarco
Attorney for Matthew Strock

cc: Peter Skinner, Esq.
Assistant United States Attorney
By Electronic Mail